UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TUMI, INC., SAMSONITE LLC, AND DELILAH EUROPE INVESTMENTS SARL,<br><br>        Plaintiffs,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY,<br><br>        Defendant. | Civ. No. 21-02752 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    In this case, a business seeks coverage from its insurer for losses related to the COVID-19 pandemic and government measures taken in response. Plaintiffs Tumi, Inc., Samsonite LLC, and Delilah Europe Investments Sarl sought coverage from their insurer, Factory Mutual Insurance Company ("FMIC"). FMIC denied coverage. Plaintiffs brought suit in New Jersey Superior Court seeking a declaratory judgment to determine FMIC's insurance coverage obligations. FMIC removed the matter to this court.

    Now, both sides move for a judgment on the pleadings. (DE 35, 36.)[1] For the reasons set forth below, plaintiffs' motion is DENIED and defendant's motion is GRANTED.

---

[1]     For ease of reference, certain key items from the record will be abbreviated as follows:

    DE _     =     Docket entry in this case
    FAC     =     First Amended State Court Complaint (DE 5-3)

1

I.  **Background**

Starting in March 2020, states and localities responded to the COVID-19 pandemic with stay-at-home orders and other measures, including the closing of retail businesses. (FAC ¶ 39–43.) Plaintiffs allege that the result has been heavy losses for their wholesale and retail luggage business. (FAC ¶ 13–15, 57–61.)

Plaintiffs turned to their insurance carriers in an attempt to recoup some of those losses. FMIC declined coverage, asserting that the COVID-19 pandemic and resulting business losses do not fall within the policy definition of "physical loss or damage." (FAC ¶ 107–108.) Plaintiffs sought payment under eleven separate clauses of the insurance policy: (1) Time Element Coverage; (2) Expenses to Reduce Loss; (3) Civil or Military Authority; (4) Contingent Time Element Extended; (5) Ingress/Egress; (6) Logistics Extra Cost; (7) Attraction Property; (8) Decontamination Costs; (9) Extended Period of Liability; (10) Interruption by Communicable Disease; and (11) Communicable Disease Response (FAC ¶ 76–88.) The first nine coverages require a showing of "physical loss or damage" to property, while the two communicable disease coverages do not. I will therefore discuss the two groups of coverages separately

The Interruption by Communicable Disease provision states, in pertinent part, as follows:

> If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
>
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such location with the actual not suspected presence of communicable disease.

(DE 35 at 10.)

Similarly, the Communicable Disease Response provision states, in relevant part, as follows:

> If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
>
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the reasonable and necessary costs incurred by the Insured at such location with the actual not suspected presence of communicable disease for the:
>
> 1) cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property; and
>
> 2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of communicable diseases on insured property.

(DE 35 at 9.)

Plaintiffs filed suit on January 19, 2021, in the Superior Court of New Jersey, Law Division, Union County, seeking a declaratory judgment that FMIC was obligated to provide coverage. (FAC ¶ 109–13.) On February 17, 2021, FMIC removed the case to federal court (DE 1). On March 18, 2021, Plaintiffs moved to remand the case (DE 5), but I denied that motion (DE 25).

Now, both sides move for judgment on the pleadings. (DE 35, 36.) Plaintiffs request that the Court 1) enter "Declaratory Judgment that the Policy's coverages for Communicable Disease and Interruption by Communicable Disease are triggered," 2) that the court declare "FMIC must pay all losses under such these coverage grants," and 3) declare "that Samsonite has established 'physical loss or damage' under the Policy" and consequently strike FMIC's first, second, fourteenth and fifteenth affirmative defenses. (DE 35 at 29.) FMIC, to the contrary, requests that this declaratory action be dismissed because plaintiffs have not alleged that they suffered

"physical loss or damage" to property and have not properly alleged the "actual not suspected" presence of COVID-19 in their stores. (DE 36 at 39–40.) Both sides filed responsive briefs (DE 40, 41) and replies (DE 44, 45). These motions are therefore fully briefed and ripe for decision.

## II.     Legal Standards

Federal Rule of Civil Procedure Rule 12(c) provides for judgment on the pleadings after the pleadings have been closed. A motion for judgment on the pleadings will be granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-263 (3d Cir. 2008) (internal citations omitted). For present purposes, the standards governing a Rule 12(c) motion and a Rule 12(b)(6) motion are similar. *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

On such a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.    Discussion

I divide my analysis of the motions into two parts. First, I examine whether plaintiffs have properly alleged that they suffered "physical loss or damage" to property, as is required by the first nine coverages. I hold, in accord with nearly all of the courts that have examined this question, that they have not. I then examine whether plaintiffs have properly alleged the "actual not

4

suspected" presence of COVID-19 in their stores and find that they have not. I therefore GRANT FMIC's motion for judgment on the pleadings, DENY plaintiff's motion for judgment on the pleadings, and DISMISS this case without prejudice as to amendment.

### a. Physical Loss or Damage

As is common in coverage cases related to COVID shutdowns, much turns on whether the spread of the Sars-CoV-2 virus or the resulting government restrictions caused "physical loss or damage" to the insured's property. The Third Circuit has not yet addressed this issue, but I find, in accord with other Circuits and numerous courts in this district and in the state of New Jersey, that COVID-19 and the resulting government restrictions did not cause "physical loss or damage" to the insured's property.

When determining the meaning of an insurance policy provision under New Jersey law, a court must "first look to the plain meaning of the language at issue." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 229 N.J. 196, 207 (2017). The parties' agreement must "be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010). Thus, in the absence of a specific definition in a policy, a word or term "must be interpreted in accordance with [its] ordinary, plain and usual meaning." *Daus v. Marble*, 270 N.J. Super. 241, 251 (App. Div. 1994). "[A] court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one [they] purchased." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) (quoting *Progressive Cas. Ins. Co. v. Hurley*, 166 N.J. 260, 272-73 (2001)). Thus, if there is no ambiguity in a policy's terms, those terms should be enforced "as written." *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 597 (2001).

Generally, physical damage to property means "a distinct, demonstrable, and physical alteration" of its structure. *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002). In cases involving

invisible but dangerous fumes and gases, courts have expanded this definition to include physical conditions that render property uninhabitable until they are remedied. *See Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 334 (7th Cir. 2021) (collecting cases and defining such an event as "direct physical loss"); see also *Fleming.Ruvoldt PLLC v. Sentinel Ins. Co., Ltd.*, No. BER-L-002938-21, 2022 WL 401883, at *4 (N.J. Super. L. Feb. 01, 2022). What these situations have in common is that a physical phenomenon affected property in a way that required physical repair or remediation.

Court of Appeals authority is overwhelmingly against the plaintiffs' position here.[2] Numerous cases in this district, relying on such authority, have likewise concluded that the impact of COVID-19 and the related government-imposed restrictions did not amount to physical loss or damage.[3] Generally these courts have found, and I agree, that neither the presence of the SARS-CoV-2 virus itself nor the resulting government restrictions have physically damaged the plaintiffs' property in any way or rendered it uninhabitable. The word "physical" plays a gatekeeping role, implying that the harm covered by the policy cannot be merely an economic consequence. Lost profits, lost goodwill, and similar types of losses, no matter how significant, are not covered under the policy unless they are caused by physical loss or damage.

---

[2] For circuit decisions finding that COVID-related interruptions did not amount to physical damage *see 10012 Holdings, Inc. v. Sentinel Ins. Co.*, 21 F.4th 216, 220-23 (2d Cir. 2021); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 933-34 (4th Cir. 2022); *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 259 (5th Cir. 2022); *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401 (6th Cir. 2021); *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 335 (7th Cir. 2021); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144-45, 1145 n.3 (8th Cir. 2021); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021); *Goodwill Indus. of Cent. Okla. Inc. v. Phila. Indem. Ins. Co.*, 21 F.4th 704, 710 (10th Cir. 2021); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021).

[3] *See, e.g., Children's Place, Inc. v. Zurich Am. Ins. Co.*, No. CV207980ESCLW, 2021 WL 4237284 (D.N.J. Sept. 17, 2021); *Manhattan Partners, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. CV2014342SDWLDW, 2021 WL 1016113 (D.N.J. Mar. 17, 2021); *Ralph Lauren Corp. v. Factory Mut. Ins. Co.*, No. CV2010167SDWLDW, 2021 WL 1904739 (D.N.J. May 12, 2021); *Marilyn's Kids, Inc. v. Cont'l Cas. Co.*, No. CV208641MASTJB, 2021 WL 4488598 (D.N.J. June 30, 2021).

Although the virus was, potentially, physically present in plaintiffs' retail stores, there is no concrete allegation to that effect. More to the point, there is no indication that the virus, even if present, damaged the premises in any physical way. Nor did the virus itself render the property uninhabitable.[4]

Plaintiffs, however, argue that I should follow the sole New Jersey case that found COVID-related losses were physical loss or damage. *AC Ocean Walk, LLC v. American Guarantee and Liability Ins. Co.*, No. ATL-L-0703-21, 2021 WL 6091224 (N.J. Super. L. Dec. 22, 2021). That case, when cited, was against the overwhelming consensus of authority. And now it has been reversed by the Appellate Division, which held "COVID-19's presence and/or the government-mandated shutdown does not constitute a direct physical loss of or damage."[5] *AC Ocean Walk*, 2022 WL 2254864, at *13 (N.J. Super. Ct. App. Div. June 23, 2022).

The Appellate Division's detailed opinion discusses and distinguishes the key cases cited by the plaintiffs in this case in support of their argument that COVID-related losses constituted "physical loss or damage." I agree with the Appellate Division's analysis and briefly discuss the two most important cases cited by plaintiffs.

First, plaintiffs extensively cite *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 406 N.J. Super. 524 (App. Div. 2009). (DE 35 at 18.) In that case, a group of supermarkets sought insurance coverage after a blackout led to food spoilage. Those plaintiffs had insurance that covered losses related to the loss of power, but, as in this case, the policy required there to be "physical damage"

---

[4] COVID-related restrictions have largely lapsed, although the virus continues to circulate, and plaintiffs' retail stores are now open. There is no allegation that the properties reopened as a result of some sort of physical remediation of the premises, and no indication that the virus is causing ongoing loss or damage to plaintiffs' property.

[5] The court also held that even if it found that COVID-related losses were amount to physical loss or damage, the policy's contamination exclusion "unambiguously excludes coverage." *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*, No. A-1824-21, 2022 WL 2254864, at *14 (N.J. Super. Ct. App. Div. June 23, 2022).

to the off-site power equipment. *Id.* at 529. In *Wakefern* the insurers argued that despite the blackout, there was no physical damage to the electric equipment. The Appellate Division concluded that the term "physical damage" was ambiguous in this context, and that, regardless, the electric grid had sustained physical damage because the grid and its component generators and transmission lines were physically incapable of performing their essential function of providing electricity.[6] *Id.* at 540. In *AC Ocean,* the Appellate Division distinguished *Wakefern,* finding that "unlike here, there was actual physical damage to property, which caused the plaintiff's losses of income." *AC Ocean Walk,* 2022 WL 2254864, at *12. It similarly distinguished the toxic fume cases because in those cases the fumes "precluded human occupancy" and therefore "the respective properties were stripped of their uses entirely until remediated." *Id.* (citing *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.,* 311 F.3d 226, 234 (3d Cir. 2002); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.,* No. 2:12-CV-04418 WHW, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014)).

As noted above, I agree with the distinctions made by the Appellate Division in *AC Ocean Walk* and I find that the complaint does not allege facts that could afford it coverage under any of the provisions of FMIC's insurance policy that require physical loss or damage. I therefore GRANT FMIC's motion for judgment on the pleadings and DENY plaintiffs' motion for judgement on the pleadings with regard to the first nine coverage provisions.

### b. Actual presence of COVID-19

The two communicable-disease provisions of plaintiffs' insurance policy do not require "physical loss or damage." They cover losses incurred as a result

---

[6] The court did note, however, that the result would have been different had the blackout been caused by a government order to conserve power. *Id.* at 540 n.7.

of the "actual not suspected" presence of a communicable disease on the insured property. It is uncontested that COVID-19 is a communicable disease and that it had to be actually present in the retail locations to trigger coverage under these provisions. FMIC argues that plaintiffs have failed to properly allege that COVID-19 was actually present at their retail locations. (DE 36 at 38–39.) I agree and therefore dismiss plaintiffs' declaratory judgment claim with regard to the communicable disease provisions.

The complaint alleges that "[t]he actual presence of COVID-19 at Samsonite Locations has triggered coverages under the Policy" and that "Samsonite sustained actual loss and extra expenses due to access to such locations being limited, restricted or prohibited due to the presence of communicable disease." (FAC ¶ 88, 92.) Plaintiffs argue that they have therefore properly alleged the actual presence of COVID-19. (DE 35 at 12.) In addition, in their brief, plaintiffs claim to have "evidence concerning employees who tested positive for the virus and who worked in Samsonite stores while contagious." (*Id.*) Such evidence may indeed exist, but at this stage I am limited to examining the pleadings and certain essential documents such as the insurance policy. Fed. R. Civ. P. 12(d). As it stands, the FAC contains no facts or details tending to show that COVID-19 was actually present at plaintiffs' retail stores. For example, it contains no statements regarding the dates and locations that employees or customers were infected with COVID-19. It instead posits it conclusory fashion that the virus was present. To survive dismissal, a complaint must contain "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must therefore GRANT FMIC's motion for judgment on the pleadings and dismiss plaintiffs' claims without prejudice.

### IV.	Conclusion

For the reasons set forth above, plaintiffs' motion for judgement on the pleadings (DE 35) is DENIED, defendant's motion for judgment on the pleadings (DE 36) is GRANTED and the FAC is DISMISSED. A separate order will issue.

Dated: July 11, 2022

/s/ Kevin McNulty

_____

**Kevin McNulty
United States District Judge**